# IN THE COURT OF APPEALS OF IOWA

No. 23-1884
Filed April 24, 2024

**IN THE INTEREST OF K.W., S.W., C.W., and L.W.,**
**Minor Children,**

**L.H., Mother,**
       Appellant.
_____


       Appeal from the Iowa District Court for Woodbury County, Stephanie Forker Parry, Judge.


       A mother appeals the termination of her parental rights. **AFFIRMED.**


       Molly Vakulskas Joly of Vakulskas Law Firm, P.C., Sioux City, for appellant mother.

       Brenna Bird, Attorney General, and Erin E. Mayfield, Assistant Attorney General, for appellee State.

       Elizabeth Stanley of Stanley Law Firm L.L.C., Sioux City, attorney and guardian ad litem for minor children.


       Considered by Ahlers, P.J., Chicchelly, J., and Carr, S.J.* Schumacher, J., takes no part.

       *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**CARR, Senior Judge.**

A mother appeals the juvenile court decision terminating her parental rights. We find the termination is supported by clear and convincing evidence and is in the children's best interests. We affirm the decision of the juvenile court.

### I.  Background Facts & Proceedings

L.H. is the mother of L.W, born in 2005; C.W., born in 2006; S.W., born in 2011; and K.W., born in 2013.[1]  The children's father is A.W.  The most recent juvenile court proceedings were initiated in May 2016, due to allegations the parents were using methamphetamine and marijuana while caring for the children.[2]  Furthermore, the parents had a history of domestic violence and criminal activity.

The children were adjudicated to be in need of assistance.  The children remained in the care of the mother, subject to supervision by HHS.  The mother was ordered to follow through with recommendations of a substance-use evaluation and participate in drug testing.

---

[1] L.W. was seventeen years old when the order terminating parental rights was filed.  She attained age eighteen soon after, and before the mother's timely notice of appeal.  L.W. is no longer subject to juvenile court procedures.  *See* Iowa Code § 232.2(5) (2023) ("'Child' means a person under eighteen years of age.").  Our task is to determine if the juvenile court termination order was correct when filed, upon our de novo review of the record then before the court.  We note that termination of parental rights has consequences beyond juvenile court procedures, including rights of intestate inheritance.  This consideration also leads us to conclude the appeal as to her is not moot.  The appeal as to L.W. is not merely academic or without practical legal effect.  *See In re M.T.,* 625 N.W.2d 702, 704 (Iowa 2021).

[2] C.W. was previously adjudicated to be in need of assistance (CINA) in 2006, and that case was closed in 2007.  The family continued to have interaction with the Iowa Department of Health and Human Services (HHS), and the mother at times voluntarily participated in services.

On December 29, 2016, the State sought to modify the placement of the children, noting the mother had not complied with the court's orders. She did not follow through with a substance-use evaluation or attend treatment. Also, she was not cooperating with services. The mother voluntarily placed the children with the maternal grandmother and her husband, the step-grandfather (maternal grandparents). The court entered an order on February 1, 2017, removing the children from the mother's care and placing them in the care of HHS. HHS placed the children with the maternal grandparents.

The mother entered an in-patient substance-use treatment program. She made progress with services. K.W. and S.W. were returned to the mother's care on a trial home basis in April, and C.W. was returned in June. The children were removed from the mother's care in September after she relapsed into using methamphetamine. The children were again placed with the maternal grandparents. There was evidence the children had increased behaviors following visits with the mother; they were often angry, yelling, confrontational, and did not listen to directives. The children attend therapy. C.W. has been diagnosed with attention deficit hyperactivity disorder.

In November 2018, the court placed the children in a guardianship with the maternal grandparents. The court noted the children, then ages six, seven, twelve, and thirteen, wanted to continue to live with the maternal grandparents but be able to see their mother.

The maternal grandmother died in December 2020. The children remained in the guardianship of the step-grandfather. The mother was not allowed to have unsupervised contact with the children or reside in the guardian's home.

Additionally, she was not allowed to have contact if she was under the influence of any illegal substances. The children continued to do very well in the guardian's care.

In July 2023, concerns arose about the children's contact with the mother and father while they were visiting the paternal grandmother. It was unknown if the parents were sober. Also, the paternal grandmother and a paternal aunt made unsupported claims about conditions at the guardian's home. On investigation, HHS determined these allegations were untrue.

On August 2, the State filed a petition seeking termination of the parents' rights. At the termination hearing, the guardian stated he was willing to adopt the children and provide them a permanent home. The mother testified she made arrangements to enter a substance-use treatment program. She asked the court to continue the guardianship. The mother recognized, "I have placed my—my interests elsewhere and my addiction and codependency, and I'm not trying to place blame on anything. I'm taking accountability for that." She also stated she drank alcohol before the termination hearing. She testified she used methamphetamine within that month. There was evidence the children asked for termination of the parents' rights.

The juvenile court terminated the mother's parental rights under section 232.116(1)(f).[3] The court found the mother was unable or unwilling to stabilize her lifestyle and "[t]he circumstances leading to the adjudication of the children continue to exist." The court determined termination of the mother's parental rights

---

[3] The father's parental rights were also terminated. He has not appealed.

was in the children's best interests "so that they will have the opportunity to grown and mature in a safe, healthy, and stimulating environment." The mother appeals the termination of her parental rights.

## II. Standard of Review

Our review of termination proceedings is de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). The State must prove its allegations for termination by clear and convincing evidence. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). "'Clear and convincing evidence' means there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.* Our primary concern is the best interests of the children. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).

In general, we follow a three-step analysis in reviewing the termination of a parent's rights. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). First, we consider whether there is a statutory ground for termination of the parent's rights under section 232.116(1). *Id.* Second, we look to whether termination of the parent's rights is in the children's best interests. *Id.* (citing Iowa Code § 232.116(2)). Third, we consider whether any of the exceptions to termination in section 232.116(3) should be applied. *Id.* But when the parent does not raise a claim relating to any of the three steps, we do not address that step and instead limit our review to the specific claims presented. *See id.* at 40 (recognizing we do not consider a step the parent does not challenge).

### III.     Sufficiency of the Evidence

The mother claims the district court should not have terminated her parental rights under section 232.116(1)(f).[4]  She does not dispute the first three elements of section 232.116(1)(f) but asserts the State did not adequately show the children could not be returned to her.  She asserts she could have the children returned to her care if she entered a shelter for women.

"We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination."  *In re T.S.*, 868 N.W.2d 425, 434 (Iowa Ct. App. 2015).  Section 232.116(1)(f)(4) requires a showing by clear and convincing evidence that a child "could not be safely returned to the custody of [the child's] parents."  *In re S.O.*, 967 N.W.2d 198, 206 (Iowa 2021).  Under section 232.116(1)(f)(4), a court considers whether a child can be returned to the parent at the time of the termination hearing.  *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021).

The evidence showed the children could not be safely returned to the mother's care at the time of the termination hearing.  The mother admitted she drank vodka in the morning before the hearing and had used methamphetamine

---

[4] Section 232.116(1)(f) provides for termination of parental rights if the following have occurred:
> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

within the month. The guardian testified that a few days earlier the mother entered the home uninvited at about 4:00 a.m., after she had been drinking alcohol. At the termination hearing, the mother acknowledged the children could not be returned to her at that time. She asked to have the guardianship continued and that the children be returned to her care when she was ready. We find the juvenile court properly applied section 232.116(1)(f).

### IV.     Best Interests

The mother contends that it would be in the children's best interests to continue the guardianship and maintain her parental rights. In considering the best interests of a child, we give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional needs of the child under section 232.116(2)." *P.L.*, 778 N.W.2d at 41. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.*

"[A] guardianship is not a legally preferable alternative to termination." *In re W.M.*, 957 N.W.2d 305, 315 (Iowa 2021). Where the statutory grounds for termination have been met, the legislature "has made a categorical determination that the needs of a child are promoted by termination of parental rights." *In re M.W.*, 458 N.W.2d 847, 850 (Iowa 1990).

We find termination of the mother's parental rights is in the children's best interests. The mother was given an extraordinarily long period of time to meet the challenges that caused the CINA adjudication and removal of the children, but has

been unable to place herself in a position where she could meet the children's needs. The children have asked to be adopted by the guardian and he testified he was willing to adopt them. We find the children need the closure of the termination of the mother's parental rights and the stability offered by adoption by the guardian.

The mother did not argue that any of the exceptions to termination in section 232.116(3) should be applied. We conclude the mother did not raise this issue on appeal and we do not address it. *See In re E.C.*, No. 19-1955, 2020 WL 1881079, at *1 (Iowa Ct. App. Apr. 15, 2020).

We affirm the juvenile court decision terminating the mother's parental rights.

**AFFIRMED.**